IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| MARIO DE LOS SANTOS, | § | |
| TDCJ No. 1741416, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil No. 6:18-CV-00033-C |
| | § | |
| LORIE DAVIS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Petitioner De Los Santos was convicted of possession of a controlled substance, methamphetamine, and was sentenced to thirty years of imprisonment by a Texas court. His petition should be denied and dismissed with prejudice because one of his claims fails to state a basis for federal habeas relief and the remaining claims lack merit.

## JURISDICTION

De Los Santos seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254, which provides the Court with jurisdiction over the subject matter and the parties, as De Los Santos was convicted within this Court's jurisdiction.

## PETITIONER'S ALLEGATIONS

The Respondent (Director) understands De Los Santos's claims to be as follows:

1.   The state habeas court erred in withholding its internal memorandum analysis used to determine the disposition of his writ application;

2.   Ineffective assistance of trial counsel for conceding the issue of probable cause to conduct a warrantless search;

3.   Ineffective assistance of trial counsel for conceding the point that no court of law had the right to set guidelines to review or regulate law enforcement;

4.   Ineffective assistance of trial counsel for failing to file a motion to recuse the judge that proceeded over the suppression hearing; and

5.   Trial court error for the judge failing to sua sponte recuse himself from the suppression hearing.

ECF 1, at 6-9.

## GENERAL DENIAL

The Director denies all of De Los Santos's assertions of fact except those supported by the record or specifically admitted herein. In addition, the Director opposes any future, substantive motions filed by De Los Santos and will respond to any such motions only upon order of the Court.

## STATEMENT OF THE CASE

### I.   Procedural History

The Director has lawful custody of De Los Santos pursuant to the judgment and sentence of the 391st District Court of Dallas County, Texas, in cause number D-10-0567-SB, styled *The State of Texas v. Mario De Los Santos*. SHCR-06, at 8-10.[1] De Los Santos was charged with second degree possession

---

[1]   "SHCR-06" refers to the clerk's record of state habeas pleadings in *Ex parte De Los Santos*, No. 64,858-06, and is followed by the applicable page numbers.

of a controlled substance, enhanced by a prior felony conviction, entered a not guilty plea, and was tried by a jury. *Id.* at 8. De Los Santos was found guilty and sentenced by the court to thirty years of imprisonment on August 16, 2011. *Id.*

De Los Santos's conviction was affirmed by the Third Court of Appeals of Texas on July 22, 2016. *De Los Santos v. State*, No. 03-15-00647-CR, slip op. (Tex. App.–Austin 2016, pet. ref'd). The Texas Court of Criminal Appeals refused De Los Santos's petition for discretionary review on December 14, 2016. *De Los Santos v. State*, PDR No. 1016-16 (Tex. Crim. App. 2016). De Los Santos's state habeas application challenging the instant conviction was "denied without written order on the findings of the trial court after a hearing"[2] on May 23, 2018. SHCR-06, at Action Taken. This proceeding followed on or around July 6, 2018. ECF 3, at 10.

## II. Statement of the Facts

On appeal, the state summarized the facts related to De Los Santos's claims as follows:

> At the hearing on the motion to suppress, the district court heard evidence that on April 16,2010, Department of Public Safety Trooper Joel Callaway stopped a vehicle for speeding. Callaway testified that the driver and sole occupant of the vehicle was identified as De Los Santos. Upon making contact with De Los Santos, Callaway recounted, he "detected the odor of marihuana in the vehicle." Callaway added that the marihuana had a "burned" smell to it. Callaway also noticed that De Los Santos was "acting nervous" and "breathing heavily" and that his hands and

---

[2]     It appears to the undersigned that the "after a hearing" notation is a typographical error, as no live hearing is part of the state habeas record. *See generally*, SHCR-06. Should the Court request, the undersigned could obtain an affidavit from the Court of Criminal Appeals addressing this issue.

voice were "shaking." Callaway asked De Los Santos to exit the vehicle and De Los Santos complied. Callaway recounted that upon searching De Los Santos for weapons, he found $4,900 in cash on his person, in the form of one-hundred-dollar bills. Callaway further testified that he then proceeded to search the vehicle and that, upon searching it, he found "a pink strawberrish crystal substance and a clear baggy in the center console," along with a wallet containing an additional $352.00 in cash and "a glass pipe with methamphetamine residue that was located between the center console and the driver's seat." On cross-examination, Callaway acknowledged that he found no marihuana or marihuana paraphernalia inside the vehicle, nor did he see De Los Santos throw anything out of the vehicle at any time.

Other witnesses at the suppression hearing included Department of Public Safety Officer Chris Dale, who searched the vehicle after it was impounded and testified that he found no marihuana inside the vehicle; and De Los Santos, who claimed that there was no odor of marihuana in the vehicle at the time of the traffic stop, denied that he had smoked marihuana prior to the stop, and claimed that "to [his] knowledge, nobody has ever smoked marihuana in [his] vehicle." Additionally, a video recording of the traffic stop was admitted into evidence. On the recording, prior to the search of the vehicle, Callaway can be heard asking DeLos Santos whether he had smoked "weed," to which De Los Santos responded that he had not. Shortly thereafter, as Callaway proceeded to search De Los Santos for weapons, De Los Santos can be heard asking Callaway, "Do you think I'm smoking weed?" Callaway can be heard replying, "I don't know."

At the conclusion of the suppression hearing, De Los Santos claimed that Callaway was lying regarding the smell of marihuana inside the vehicle and that, consequently, Callaway had no probable cause to search the vehicle without a warrant. The district court denied the motion to suppress and the case proceeded to trial. At the conclusion of trial, the jury found De Los Santos guilty of possession of methamphetamine as charged and the district court rendered judgment on the verdict and assessed punishment as noted above.

*De Los Santos v. State*, slip op. at 1-3 (footnotes omitted).

## STATE COURT RECORDS

Records of De Los Santos's trial, appeal, and state habeas proceedings have been filed with the Court. The portions of the state court records that the Director relies on in her answer are designated as exhibits and attached as an appendix to this answer.

## EXHAUSTION/LIMITATIONS/SUCCESSIVE PETITION

The Director believes that De Los Santos's claims are exhausted, 28 U.S.C. § 2254(b). The petition is not barred by limitations, 28 U.S.C. § 2244(d), or subject to the successive petition bar, 28 U.S.C. § 2244(b).

## ANSWER

### I.    Standard of Review

Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in state criminal justice systems, not a substitute for ordinary error correction through appeal. For claims that were adjudicated in state court, § 2254(d) imposes a highly deferential standard that demands a federal court grant habeas relief only where one of two conditions are present in the state court judgment. A federal court may grant relief if the state court adjudicated a constitutional claim contrary to, or unreasonably applied clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011) (citing *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2002)). Or the court may grant relief if the state court decision was based on an unreasonable determination of facts in light of the record. *Id.* Section 2254(d)'s standard is necessarily difficult to meet because it was so designed.

A state court decision can be "contrary" to established federal law in two ways. *(Terry) Williams*, 529 U.S. at 405–06. First, if the state court applies a rule that contradicts Supreme Court precedent. *Id.* at 405. Second, if the state court confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent, but reaches an opposite result. *Id.* at 406.

A state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *(Terry) Williams*, 529 U.S. at 406. A state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. The focus of this test is not on the state court's method of reasoning, but rather on its ultimate legal conclusion. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) ("It seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision.").

To determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington*, 562 U.S. at 87. Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. Id. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further, in reviewing a state court's

merits adjudication for reasonableness, a federal court is limited to the record that was before the state court. § 2254(d)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## II. De Los Santos's State Habeas Error Claim is Not Cognizable. (Claim 1)

De Los Santos claims that the state habeas court erred in withholding its internal memorandum analysis used to determine the disposition of his writ application. ECF 1, at 6-7. However, this claim is not cognizable on federal habeas corpus review.

This Court cannot grant habeas corpus relief "to correct alleged errors in state habeas proceedings." *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir.1997). "Federal habeas relief cannot be had 'absent the allegation by a petitioner that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)); *Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir.1999) ("errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief."). As such, this Court must dismiss the claim.

## III. The State Court Reasonably Denied De Los Santos's Ineffective Assistance of Trial Counsel Claims. (Claims 2-4)

In claims 2 through 4, De Los Santos alleges counsel was ineffective for: conceding the issue of probable cause to conduct a warrantless search; conceding the point that no court of law had the right to set guidelines to review or regulate law enforcement; and failing to file a motion to recuse the judge

that proceeded over the suppression hearing. EFC 1, at 6-9. These claims are without merit and should be denied.

A defendant has the burden of establishing that he was deprived of effective assistance of counsel by a preponderance of the evidence. *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). In *Strickland v. Washington*, the Supreme Court enunciated the familiar two-prong test for reviewing ineffective assistance of counsel claims. 466 U.S. 668, 687 (1984).

Under the first-prong of *Strickland*, a defendant must show that his trial counsel's performance was deficient. *Id.* In other words, the defendant must establish that his counsel's representation fell below an objective standard of reasonableness. *Clark*, 227 F.3d at 282. This showing requires a defendant to prove that his counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

A reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 689). Additionally, courts "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Accordingly, courts "must be highly deferential" to counsel's performance. *Id.*; *see also Strickland*, 466 U.S. at 689. Every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

Under the second-prong of the *Strickland* test, a defendant must show that his counsel's deficient performance prejudiced him. *Galvan*, 293 F.3d at 764. Thus, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Clark*, 227 F.3d at 283. "Even a deficient performance does not result in prejudice unless that conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 687). A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Because a defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Strickland*, 466 U.S. at 697.

De Los Santos has attempted to show deficient performance by second-guessing counsel's decisions, *i.e.*, that counsel might have handled things differently. As such, they fail to satisfy the first prong of *Strickland.* Indeed, these are precisely the type of claims disfavored by *Strickland.* 466 U.S. at 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Trial counsel for De Los Santos filed an affidavit on state habeas responding to De Los Santos's allegations. SHCR-06, at 50-51. In deny relief, the state court implicitly found that the affidavit was credible. SHCR-06, at Action Taken. This factual determination is entitled to a presumption of correctness which De Los Santos has failed to rebut. 28 U.S.C. § 2254(e); *see Neal*, 239 F.3d at 696.

With regard to De Los Santo's claims that counsel was ineffective for conceding that there was probable cause for the search, claim 2, and that no court of law had the right to set guidelines to review or regulate law enforcement, claim 3, trial counsel explained:

> I was retained to represent Mario De Los Santos in August 2010. After conducting a review of discovery and consulting with my client, I filed a Motion To Suppress evidence on December 8, 2010.
>
> On January 25, 2011 the motion was heard in the 391st District Court. During that hearing I questioned the arresting officer and suggested he was not being truthful asking him "Trooper Callaway is it possible that you fabricated the odor of marijuana as part of your justification for the probable cause for a search (RR 2, p. 24)?"
>
> I asked the trooper if he would agree that smelling the odor of marijuana alone would give an officer probable cause for a search, and he agreed. But then I pointed out that in this case that is not how he acted because he kept questioning the Defendant for 12 minutes after he claimed he smelled marijuana (RR 2, p. 25). I then asked the trooper "Is it possible that based on his appearance and the way he was dressed, and maybe a hunch, you got him out of the vehicle to see if you could find some probable cause through questioning this man (RR 2, p. 25, line 14)?

At the conclusion of the hearing I argued on behalf of Mr. De Los Santos by saying "Your honor the essence of our argument is this: If trooper Callaway really smelled marijuana when he stopped Mr. De Los Santos, there is no legal reason for him to be investigating for a further 12 minutes, and there is no need for him to inquire into his criminal background, and we believe the evidence shows that Trooper Callaway did not smell marijuana" and that he began an investigative detention without any reasonable suspicion and the search was not legally justified (RR2,p.69).

The motion was denied.

The allegation by Mr. De Los Santos that I conceded the point of probable cause is absolutely untrue.

SHCR-06, at 50-51. Further, the state court made the following finding regarding these claims:

> Applicant has failed to plead sufficient facts showing deficient performance which may be found and based in the record. In Ground One, Applicant complains that his then trial counsel, J.W. Johnson, "conceded" probable cause in his cross-examination of State's witness Trooper Joel Callaway. While it is true that Mr. Johnson asked "Would you agree with me that under the laws that exist today, if you detect the odor of marijuana coming from a vehicle, that that alone is sufficient probable cause to search the vehicle right then and there without any further investigation?" Trooper Callaway replied in the affirmative. This, however, by itself does not establish ineffective assistance of counsel. Based upon the undersigned judge's recollection of the suppression hearing, it was clear that Mr. Johnson's trial strategy was to impeach the credibility of Trooper Callaway. Two questions prior Mr. Johnson asked Trooper Callaway if his testimony was "fabricated." Given the facts as contained in the State's evidence as apparently given to Mr. Johnson on discovery, including Applicant consenting to a search of his person, there was very little trial strategy available to Mr. Johnson other than to question the credibility of the State's arresting officer. Applicant's bare assertion that "Defense counsel's representation fell so far below the reasonable standard of effective assistance" is nothing more

than a legal conclusion which will by itself, not support the relief requested.

\*      \*      \*

[Regarding Applicant's claim that counsel was ineffective for conceding the point that a Court of Law had no right to review the conduct of police officers performing searches and seizures,] Applicant fails entirely to allege facts which would support a finding of ineffective assistance of counsel under *Strickland*. He presents nothing more than scrambled legal conclusions, and fails to address entirely prong two under *Strickland*.

The court finds that Applicant has failed to show he is entitled to relief under Ground Three.

SHCR-06, at 148, 149.

With regard to De Los Santo's claim that counsel was ineffective for failing to file a motion to recuse the judge at the suppression hearing, claim 4, trial counsel explained:

Mr. De Los Santos alleges he wanted to recuse Judge Gossett. He did not direct me to file a motion for recusal.

SHCR-06, at 51. Further, the state court made the following finding regarding this claim:

Generally, a judge is not required to be recused based solely on his prior rulings remarks or actions. *Gaal v. State*, 332 S.W. 3d 448, 454 (Tex.Crim.App.2011). A judge's bias or partiality may be grounds for a recusal motion only if the conduct shows a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Also, trial counsel is not required to file futile motions, *Mooney v. State*, 817 S.W. 2d 693, 698 (Tex. Crim. App. 1991), nor is trial counsel's failure to file a pretrial motion categorically deemed ineffective assistance of counsel. *Madden v. State*, 911 S.W. 2d 236, 241 (Tex. App.-Waco 1995, pet. ref'd) (holding that counsel was not ineffective for not filing a motion to recuse the judge who presided at a trial when he previously had

prosecuted a prior case used to enhance the current case). A record that is silent as to defense counsel's trial strategy and provides no explanation of counsel's actions generally will not overcome the strong presumption of reasonable assistance. *Diaz v. State*, 380 S.W. 3d 309, 312 (citing *Rylander v. State*, 101 S.W. 3d 107, 110 [Tex. Crim. App. 2003]).

Under Ground Two, Applicant fails to plead sufficient facts showing deficient performance which may be found and based in the record. Applicant fails to show the necessary bias or partiality which reveals such a deep-seated favoritism that fair judgment was impossible. The claim of bias runs through all four of Applicant's Grounds. It also was the sole issue alleged on his appeal, which was rejected by the Third Court of Appeals, At Austin. Ultimately he fails to show any facts supporting either prong under *Strickland*, choosing instead to cherry-pick various quotes from the record of the suppression hearing and making legal conclusions.

The undersigned judge finds that Applicant has failed to plead facts, which if true would entitle him to relief under Ground Two.

SHCR-06, at 148-49.

De Los Santos has failed to rebut the presumption of correctness afforded these findings. *See* 28 U.S.C. § 2254(e). He fails to demonstrate that counsel's decisions were not reasoned trial strategy. *Wilkerson*, 950 F.2d at 1065. And he demonstrates neither deficiency nor prejudice.

Moreover, the deference afforded to the state court's denial of De Los Santos's ineffective assistance of counsel claims is great. The question is not whether the state court's application of *Strickland* was incorrect, but rather was it unreasonable, a much higher standard. *Wooten v. Thaler*, 598 F.3d. 215 , 222 (5th Cir. 2010), *citing Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). As the Supreme Court has explained, "because the *Strickland* standard is a

general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123. Federal court review of state court decisions is thus "doubly deferential." *Id*. De Los Santos has not overcome the deference afforded to the state court's determination and, as such, his claims should be denied.

## IV.  The State Court Reasonably Denied De Los Santos's Trial Court Error Claim. (Claim 5)

De Los Santos claims trial court error because the judge failed to recuse himself from the suppression hearing. ECF 1, at 9. This claim lacks merit.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Thus, trial court error under state law "does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). Only those errors that violate "those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency,'" will render a trial fundamentally unfair. *Id*. at 353 (citing *United States v. Lovasco*, 493 U.S. 783, 790 (1977)); *see also Menzies v. Procunier*, 743 F.2d 281, 288 (5th Cir. 1984) ("An unfair trial has been characterized as one that has been 'largely robbed of dignity due a rational process'") (quoting *Houston v. Estelle*, 569 F.2d 372, 383 (5th Cir. 1978)).

Moreover, on federal habeas review of state court convictions, a federal harmless error standard applies. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Fry v. Pliler*, 127 S.Ct. 2321, 2328 (2007) (holding that the *Brecht* standard applies in all § 2254 proceedings). Therefore, to be actionable, the trial court error must have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

De Los Santos's claim that the judge was biased against him, and therefore should have recused himself, is conclusory. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (citations omitted). Moreover, all cases should begin with the presumption that the judicial officer is unbiased. *Schweiker v. McClure,* 456 U.S. 188, 195 (1982).

In *Liteky v. U.S.*, 510 U.S. 540(1994), the United States Supreme Court discussed the "extrajudicial source" doctrine. The Court first noted that the terms "bias" and "prejudice" "connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate...." *Id.* at 550 (emphasis in original). The following passage from this opinion explains the kind of bias or prejudice requiring recusal:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence.

> If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions."

*Id.* Regarding whether judicial rulings can establish bias, the Supreme Court observed that judicial rulings alone almost never constitute a valid basis for a recusal motion because they cannot possibly show reliance upon an extrajudicial source, and can rarely evidence the degree of favoritism or antagonism required when no extrajudicial source is involved. *Id.* at 554-56; *see Berger v. United States*, 255 U.S. 22, 31 (1921) ("the bias or prejudice which can be urged against a judge must be based on something other than the rulings of the case").

The Court further stated that opinions formed by the judge on the basis of facts introduced or events occurring during proceedings do not constitute a basis for a recusal motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.* Thus, the Supreme Court reasoned that judicial remarks during the course of a trial that are critical or disapproving or even hostile to counsel, parties, or their cases, ordinarily do not support recusal. *Id.* Such remarks may do so if they reveal an opinion deriving from an extrajudicial source, and such remarks will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.*

De Los Santos has provided no evidence to support a contention that the trial judge was subject to an extrajudicial source. Furthermore, De Los Santos has failed to demonstrate that the judge's ruling on the motion to suppress, which he alleges demonstrates bias, was anything more than the result of facts introduced or events occurring during the hearing. ECF 1, at 9; *see Berger*, 255

U.S. at 31. And the ruling certainly does not display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.* Indeed, De Los Santos challenged the denial of the motion to suppress the evidence on appeal, and the appellate court upheld the judge's ruling. *De Los Santos v. State*, slip op. at 8. Specifically, the appellate court found:

> In his sole issue on appeal, De Los Santos asserts that the district court abused its discretion in denying his motion to suppress. However, rather than attack the legal basis of the district court's decision, specifically its conclusion that the odor of marihuana provided Callaway with probable cause to search the vehicle, De Los Santos claims that the district court did not act in a "neutral and detached" manner in evaluating the credibility of Trooper Calloway's testimony that he had smelled marihuana inside the vehicle. As support for this contention, De Los Santos points to the following exchange during the parties' closing arguments at the suppression hearing:
>
> > [Prosecutor]: Your Honor, the defense has conceded that the search without a warrant based upon the smell of marihuana is legal and proper. As I understand, his argument today is they just don't believe the trooper.
> >
> > [The Court]: That's right, and it's whether or not the Court believes Mr. Callaway is lying.
> >
> > [Prosecutor]: And based on the credibility of the highway patrol and his actions, which the Court was allowed to review by both his testimony and demeanor in court, and by the Court's observations on the videotape. It is very obvious to note that Trooper Callaway and the Defendant had some discussion regarding marihuana almost as soon as he got out of the vehicle, and Trooper Callaway never wavered in his testimony that within 40 seconds of having made contact with Mr. De Los Santos, he had decided he was going to search the vehicle.

. . . .

Now, the defense, and the Defendant, through his testimony, says "I wasn't smoking marihuana." He says that on the tape at some point. Who was smoking the marihuana is not all that important. It's just that the officer detected the odor of the marihuana coming from the vehicle.

I don't know if the Defendant had a buddy in the vehicle 30 minutes before the stop that had smoked a joint. It doesn't really matter. If the odor lingered and the officer detected it, it gave him the probable cause under the automobile exception and his training to go ahead and search that vehicle for contraband, which he found. . . .

[The Court]: All right. Thank you. Anything else, [defense counsel]?

[Defense counsel]: Well, Your Honor, we believe the video speaks for itself in that it was 12 minutes into this encounter before the Trooper Callaway told Mr. De Los Santos that he smelled marihuana. Up until that point, the trooper was asking him about his marihuana possession in the past, he was asking him if he drank alcohol, he was running a criminal history check on him.

[The Court]: All of which is good for his conduct, would you agree?

[Defense counsel]: But the probable cause for the stop was speeding, Your Honor, and he had him out of the truck within one minute after approaching the vehicle.

[The Court]: Is it your contention that the Trial Court is to second guess the officer in the field and establish Court ordered guidelines how they are supposed to conduct themselves? I am supposed to second guess him?

[Defense counsel]: No, Your Honor.

[The Court]: I am supposed to tell him, "No, you didn't smell marihuana"?

[Defense counsel]: Well, what we need to look at is all the other factors. There was no marihuana found—

[The Court]: And the very fact that he waited some 12 minutes before he started the search leads me to believe that he was doing a very good job, that he was doing what he was supposed to do with his training. If he had pulled him out and started searching immediately, I would have been much more suspicious about this search.

[Defense counsel]: Well, he did pull him out and did a [ ] frisk on him, I mean, without—

[The Court]: He is allowed to.

[Defense counsel]: Well, without articulating any suspicion for why he wanted him to do that?

[The Court]: That's correct. I am not going to tell this officer how he is supposed to conduct his traffic stops or searches.

According to De Los Santos, the above comments by the district court demonstrate that it was biased against him and unduly deferential toward the arresting officer.

"Due process requires a neutral and detached hearing body or officer." However, "[a]bsent a clear showing of bias, we presume a trial court is neutral and detached." We cannot conclude that the above comments or anything else in the record demonstrate a "clear showing of bias" against De Los Santos. As the State observes in its brief, "[n]owhere does the trial judge state he is refusing to hear or consider testimony put forth by appellant on the issue at hand," i.e., whether the officer smelled the odor of

burnt marihuana inside the vehicle. Rather, the district court's comments were merely to the effect that it found unconvincing De Los Santos's proposed inferences that the officer should be deemed not credible based on the sequence and timing of events during the search. The district court, as the finder of fact at the suppression hearing, was entitled to weigh the evidence presented and make credibility determinations and inferences regarding that evidence, including finding credible the officer's testimony that he had smelled marihuana inside the vehicle. Further evidence in support of the district court's finding included Callaway's testimony that he had been a highway patrolman for eight years, that he had received instruction in the detection and identification of different types of drugs, including marihuana, and that he was familiar with the smell of marihuana and had encountered the smell of marihuana "many times." In contrast, De Los Santos presented no evidence controverting Callaway's account of his background, training, or ability to identify the smell of marihuana. On this record, we cannot conclude that the district court abused its discretion in crediting the officer's testimony that he had smelled marihuana inside the vehicle and thus in determining that the officer had probable cause to search the vehicle on that basis.

We overrule De Los Santos's sole issue on appeal.

*De Los Santos v. State*, slip op. at 4-6. De Los Santos has provided no evidence that rebuts these findings. 28 U.S.C. § 2254(e); *Neal*, 239 F.3d at 696. De Los Santos has not demonstrated any trial court error, much less that which deprived him of fundamental fairness. *See Skillern*, 720 F.2d at 852; *Brown*, 419 F.3d at 376. His conclusory allegations are insufficient to warrant relief. The state court's denial of relief was reasonable and this Court should also deny relief.

## CONCLUSION

For the above reasons, the Director requests that the petition be denied and dismissed with prejudice, and that no certificate of appealability issue.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division


s/ Jessica Manojlovich
*Lead Counsel     JESSICA MANOJLOVICH*
Assistant Attorney General
State Bar No. 24055632

P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 936-1400
(512) 936-1280 (FAX)

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing pleading has been served by placing the same in the United States Mail, postage prepaid, on this the 21st day of December, 2018, addressed to:

Mario De Los Santos
No. 42692-177
BOP Oakdale FDC
PO Box 5010
Oakdale, LA 71463

s/ Jessica Manojlovich
JESSICA MANOJLOVICH
Assistant Attorney General
